No. 21,138.

WESTYE MONSON, *Appellee,* v. A. C. BATTELLE, *Appellant.*

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Assignment of Judgment.* The question whether an injured workman may assign a judgment under the workmen's compensation act to a trustee for the benefit of his children, considered but not determined.

2. SAME—*Lump Sum Judgment—Death of Employee—Revivor of Judgment.* A lump sum judgment in favor of an injured workman under the workmen's compensation act, although the statute forbids its assignment, does not abate by his death, but may be revived in the name of an administrator.

3. SAME—*Injury Occurred on Premises of Employer.* The evidence in an action under the compensation statute held to support a finding that the plaintiff was injured on the premises where he was employed, by having to wade through flood water which had overflowed the defendant's car works; an old wound on his foot being thereby infected, requiring an amputation.

4. SAME—*Injury "By Accident."* Such an injury is one "by accident," within the meaning of the phrase as used in the statute.

5. SAME—*Injury Arose "In Course of Employment."* Such an injury is one arising out of and in the course of the plaintiff's employment, within the meaning of the statute.

6. SAME—*Hypothetical Question.* Objections to the form of a hypothetical question held not to justify a reversal.

7. SAME—*Petition for New Trial—Proceeding on Appeal.* The situation held not to require a withholding of the determination of the case by this court to give opportunity for a hearing on a petition for a new trial.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed January 12, 1918. Affirmed.

*Adrian F. Sherman,* of Topeka, *Fred M. Harris,* of Ottawa, and *Thad B. Landon,* of Kansas City, Mo., for the appellant.

*W. S. Jenks,* of Ottawa, for the appellee.

The opinion of the court was delivered by

MASON, J.: Westye Monson recovered a lump sum judgment under the workmen's compensation act against A. C. Battelle. An appeal was taken, pending which a revivor was ordered by this court in the name of Elizabeth Appleros, to whom an assignment of the judgment had been executed by the plaintiff, and who is the administratrix of his estate. The defendant moves to set aside the order of revivor, and also asks (in the event of his motion being overruled) that the judgment be reversed because the evidence did not bring the case within the operation of the compensation act.

1. The defendant maintains that the assignment of the judgment was a nullity because forbidden by the statute. (Gen. Stat. 1915, § 5909; Laws 1917, ch. 226, § 5.) The act as it stood at the time the assignment was made read as follows:

"The payments due under this act, as well as any judgment obtained thereunder, shall not be assignable or subject to levy, execution or attachment, except for medicine, medical attention and nursing." (Gen. Stat. 1915, § 5909.)

Here the assignment was made to Elizabeth Appleros, in trust for the four children of the judgment plaintiff. The object of the statute was doubtless to prevent the fund being diverted from the purpose for which it was intended. An assignment to a trustee for the benefit of the children of an injured workman would not seem necessarily to conflict with the spirit of the law. We shall assume, however, without deciding, that the assignment is invalid.

14—102 Kan.

2. The argument against a revivor being allowed in the name of the administratrix is based upon the contention that "under the compensation law, the right to compensation and any judgment for compensation abates upon the death of the employee, and does not survive to his heirs or representatives." In support of this contention it is argued that compensation where death results from an injury to a workman is allowed only to his dependents, and therefore his heirs as such, or his executor or administrator, have nothing to do with it. That situation, however, is obviously not fully analogous to the one here presented, where a judgment was rendered in favor of the workman. It has been held that a judgment under the compensation act, providing for periodical payments to an injured workman, although subject to commutation, does not survive the plaintiff's death. (*Wozneak v. Buffalo Gas Co.*, 161 N. Y. Sup. 675.) In the case cited the trial court had decided to the contrary, and two of the five appellate judges dissented from the reversal. That decision, however, if accepted as sound, would not control here. In the present case the plaintiff had obtained an absolute personal judgment requiring the immediate payment of a fixed amount. It was the legal duty of the defendant to pay it at once, unless a stay should be procured pending an appeal. If payment had been made the money would have been wholly at the disposal of the plaintiff. If the final result is an affirmance it will amount to an adjudication that the rights of the parties shall remain as fixed at the time the judgment was rendered. The defendant gains no immunity from the fact of his having taken an appeal which is ultimately determined not to have been well founded.

The final argument against the right of revivor, is that because the judgment is not assignable it does not survive the death of the plaintiff. It is true that as a rule causes of action which are not assignable do not survive. (1 C. J. 175, 176.) But a judgment based on a nonsurviving cause of action ordinarily does survive (1 C. J. 169), and does so in this state, notwithstanding the pendency of an appeal. (*Powers v. Sumbler*, 83 Kan. 1, 110 Pac. 97.) Moreover, while as a rule causes of action which are not assignable do not survive, this is because of qualities that inhere in the nature of the right. Where the statute for some special purpose, as the protection of a

claimant against improvidence, forbids assignment, nonsurvivability does not necessarily result therefrom. The new government war savings certificates are expressly made not transferable, but it will hardly be doubted that the title would pass to the heirs or personal representatives of the owner upon his death. We hold that if the assignment was invalid the revivor was properly made in the name of the administratrix.

3. The plaintiff's claim was that he had been injured by having to wade through foul and impure flood water which had overflowed the yards of the defendant's car works, where he was employed; that at the time an old injury to his foot had not healed; and that infection followed, as a result of which amputation became necessary. The defendant insists that there was no evidence that the loss of the foot was caused by reason of contact with the water. The plaintiff testified that his foot was badly swollen on the morning after the exposure referred to; that the swelling increased for several days; that he received no subsequent injury; and that amputation followed shortly. At least one physician testified that from the history of the case, as embodied in a hypothetical question which fairly covered the ground indicated, he thought it probable that the amputation was made necessary by infection caused by wading through the water. This was sufficient to take that issue to the jury.

4. The statute relates only to injuries "by accident arising out of and in the course of employment." (Gen. Stat. 1915, § 5896; Laws of 1917, ch. 226, § 27.) It is contended that the plaintiff's injury was not the result of an accident. The infection of an existing wound by contact with foreign matter seems to be within the ordinary meaning of the term—"an unlooked-for and untoward event which is not expected or designed." (Notes, L. R. A. 1916A, 227, 1917D, 103; Workmen's Compensation Acts, a Corpus Juris Treatise by Donald J. Kiser, § 54, p. 64.) The contracting of typhoid fever through drinking polluted water furnished by the employer has been held to be attributable to "accident," within the meaning of that term as employed in a compensation statute. (*Vennen v. New Dells Lumber Co.*, 161 Wis. 370; see, also, cases cited there, and in the Corpus Juris Treatise referred to, p. 66.) "An injury may be by accident, although it would not have been sustained by a

perfectly healthy individual." (Corpus Juris Treatise, p. 69.) "The courts very generally hold that if an existing disease is aggravated by accident or injury, compensation must be paid for the resulting injury." (Note, L. R. A. 1917D, 105; see, also, *id.* pp. 129, 130.)

5. The principal contention of the defendant is that, accepting the plaintiff's own version of the affair, the injury did not arise out of or in the course of his employment. He testified that the water covered the railroad track running through the yard of the car works where he was employed; that when he checked in in the morning there was n't much water; that he did n't have to wade through it at noon when he quit work, or at one o'clock when he returned; but that when he checked out at six o'clock in the evening he had to go to the timekeeper's office; that the water was then within five feet of the office and he had to wade over his shoes. The evidence is not very clear on the point, but is open to the construction that the water through which the plaintiff waded was upon the premises where he was employed. It is clear that the injury was received in the course of employment. His going to the timekeeper's office to check out was a necessary incident to the performance of the duties for which he was paid. (*Sedlock v. Mining Co.*, 98 Kan. 680, 159 Pac. 9; Corpus Juris Treatise, § 74, p. 83.) The serious question is whether it arose out of it.

Irrespective of any question of negligence, the standing of the flood water on the ground which was a part of the defendant's factory became for the time being one of the conditions under which the business was carried on. It was not a condition peculiar to the kind of business done, but it was one which gave rise to a special risk incurred by the workmen there engaged. We think the injury (assuming the facts to be as claimed by the plaintiff) is to be regarded as one arising out of the employment. Recoveries under the compensation act can only be had for injuries received in certain specified kinds of business, which are designated as "especially dangerous." (Gen. Stat. 1915, § 5900; Laws 1917, ch. 226, § 1.) But it does not follow that the only injuries for which compensation is provided are those which result from the use of devices or methods which are in themselves exceptionally hazardous. The employer is protected as to this feature of the matter by the

rule that he is not liable for any injury which happens else-
where than "on, in or about" his factory; that is to say, in the
factory, or in such close proximity to it that the place "is
within the danger zone necessarily created by those peculiar
hazards to workmen which inhere in the business" of operating
it. (*Bevard v. Coal Co.*, 101 Kan. 207, 215, 165 Pac. 657.)
But the hazards on account of which the employer may be held
liable are not alone those which are the necessary accompani-
ment of operating any business of like character (Corpus Juris
Treatise, § 64, p. 74) ; they include all that result from the car-
rying on of the business in the way in which it is actually car-
ried on. The driver of a truck who was injured while handling
meat in the course of its delivery to a customer, at some distance
from the packing house, was held not to be within the protec-
tion of the statute. (*Hicks v. Swift & Co.*, 101 Kan. 760, 168
Pac. 905.) But the reason was that he was not hurt "in or
about" the factory. His injury, however, arose out of his em-
ployment, and if it had happened in the same way while he was
loading the truck at the packing house, or at a place immedi-
ately adjoining it, he would undoubtedly have been entitled to
recover.

The case is not similar to those in which a workman while
engaged in his employment is injured by some unexpected ex-
traneous agency, such, for instance, as a stroke of lightning, or
the sportive act of a fellow employee, when there is no causal
connection between the injury and the condition under which
he was required to work. The water had been slowly rising all
day prior to the plaintiff's injury, and although its presence
was the result of forces beyond the defendant's control, it
would have been quite possible for him to have made some ar-
rangements to avoid the necessity for the plaintiff's wading
through it. That the making of such an arrangement might
have been beyond the requirements of mere ordinary prudence
does not affect the matter. An injury may be said to arise out
of the employment when there is a causal connection between
the conditions under which the work is required to be per-
formed and the resulting injury. (Corpus Juris Treatise,
§ 64, p. 73.) In principle the situation is not unlike that pre-
sented in *Stuart v. Kansas City*, post, p. 307, decided at this
session, where it is held that an employee may recover com-

pensation for an injury caused by the playful or wanton act of a fellow workman, whose earlier conduct of the same sort had made it possible to anticipate such a happening.

6. Complaint is made of the overruling of an objection to a hypothetical question, on the ground that it seemed that the plaintiff came in contact with the water on four or five different occasions, instead of but once, as he testified, and because the fact that the bones were necrosed was omitted. We do not find the objectionable matter in the question, and any omissions could have been corrected upon cross-examination. In any event, especially as no jury was present, we think no prejudice is shown.

7. We are asked to withhold the determination of the case to give the defendant an opportunity to be heard in the trial court on a petition for a new trial on the ground of newly discovered evidence. That is a matter in which it is competent for the district court to give him protection, if the situation is found to warrant it.

The judgment is affirmed.

PORTER, J., dissents.