No. 21,771.

PAUL RAFFAGHELLE, *Appellee*, v. PETER RUSSELL, *Appellant*.

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Injuries—Partial Disability—Right to Compensation.* A workman who is injured in the course of his employment is not to be denied compensation for such injury and consequent diminished earning capacity merely because his injury was not so serious as to totally disable him from labor for the first two weeks immediately succeeding the accident.

2. SAME. An injured workman who only in pain and distress and with the friendly help of his fellow workmen can earn as much as he did before his injury, may maintain an action against his employer for permanent partial incapacity under the workmen's compensation act.

3. SAME—*Lump-sum Judgment—No Material Error.* Error assigned on abuse of discretion in an award of a lump-sum judgment instead of periodical and terminable payments to an injured workman, examined, and not sustained.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed December 7, 1918. Affirmed.

*A. B. Keller,* and *George R. Malcolm,* both of Pittsburg, for the appellant; *C. O. Pingry,* of Pittsburg, of counsel.

*A. L. Majors,* of Columbus, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff was employed in defendant's coal mine. A large rock fell from the roof of the mine and crushed a fellow workman. In response to the latter's appeal for help, plaintiff sustained a femoral rupture while exerting all his strength to lift the rock from the injured man.

This case was brought under the workmen's compensation act, and the trial court awarded plaintiff a lump-sum judgment computed on the basis of five dollars and some cents per week for eight years, pursuant to a finding that plaintiff's injuries were of a permanent nature and partially incapacitated him for work.

Defendant contends that there was no evidence to sustain the finding of diminished capacity, and cites part of section 5896 of the General Statutes of 1915, which before the amendments of 1917 provided:

"That (a) the employer shall not be liable under this act in respect of any injury which does not disable the workman for a period of at least two weeks from earning full wages at the work at which he is employed."

It is true that plaintiff's injury did not immediately and totally incapacitate him from labor. He continued to work for some time, although he began to feel pain the night following the injury.

Plaintiff testified:

"Before I got hurt I used to lay off and have a good time and after I got hurt I layed off because I hurt. . . . I lay off about two weeks before I came here. . . . Since I was hurt in the mines I worked every day I possibly could and as hard as I could. I have tried my best. . . . In the Illinois mine I did not work alone. There were two men working with me. . . . When a big chunk would fall my buddy lifted it for me. . . . They lifted the large pieces of coal in the car for me because I couldn't lift them myself. . . . When I am working a knot sticks out on me."

The statute quoted does not mean that unless a workman's injuries totally disable him from laboring for the first two weeks succeeding his mishap he cannot recover. It means that unless the injury is sufficiently serious to disable him for two weeks, the injury is considered by the statute to be too trivial for its concern. The statute would discourage malingering, and the harassing of employers with petty claims of little or

Raffaghelle v. Russell.

no merit. But it would never do to say that the courageous workman who sticks to his task notwithstanding his pain and injury is to be penalized for so doing. Neither would it do to say that an injured workman who in pain and distress and with the gratuitous help of his fellow workmen can still earn as much as he was wont to do before his strength and vigor were impaired is not entitled to compensation. A workman who is injured is not compelled then and there to lay off for two weeks to protect his rights under the act. The soldier who is wounded, but who still "carries on," is looked upon as a hero; the injured workman who likewise attempts to "carry on" will lose nothing by so doing when his rights become a matter of judicial determination.

The court discerns no trouble as to the sufficiency of the evidence of diminished earning capacity. The plaintiff was so much distressed that he had to go to another state, to a mine where the coal vein was eight feet thick, and where his "buddies" (friendly fellow workmen) would help him with heavy lifting. The court attaches no controlling significance to the fact that his semimonthly pay checks were sometimes as large or larger after his injury than they were before he was hurt. The evidence showed that in the days of his full vigor he occasionally took a lay off to enjoy himself; since his injury he occasionally is compelled to take a lay off because of pain which now attends his arduous vocation. These were merely circumstances to be considered with all the other facts and circumstances, *pro* and *con,* in determining whether plaintiff's claim was genuine or spurious.

It is also contended that the court erred—that it abused its discretion—in awarding plaintiff a lump-sum judgment, and that if plaintiff was entitled to compensation it should have been awarded in periodical payments. It may be true that ordinarily a rupture like a femoral hernia can be successfully treated by a surgical operation which is not considered dangerous to life nor attended by much suffering, and that if plaintiff would resort thereto he might be completely restored to his former vigor in a few weeks or months, probably in much less time than eight years. But this court cannot say that on that account the trial court abused its discretion in granting a lump-sum judgment. Moreover, in this case as in many preced-

ing appeals touching this compensation act, counsel urge too strongly the general philosophy upon which compensation acts are supposed to be founded, and do not read with close and critical scrutiny the literal text of the Kansas act. Some years ago, when reformers and magazine writers were urging legislatures to enact these compensation laws, the matter of periodical payments for injured workmen was elaborated, and it was wisely urged that courts or commissions should have power, not only to award such judgments, but also to terminate the periodical payments when assured that the injured workman was completely restored. While that doctrine will be found in the Kansas act (Gen. Stat. 1915, § 5926), the Kansas legislature apparently had a mind of its own, and it provided first and foremost that where injured workmen are compelled to resort to judicial proceedings to secure compensation they may be awarded a lump-sum judgment, and, secondly, that, in the discretion of the trial court, the decree may provide for periodical and terminable payments.

"The judgment in the action, if in favor of the plaintiff, shall be for a lump sum equal to the amount of the payments then due and prospectively due under this act, . .. . or, in the discretion of the trial judge, for periodical payments as in an award." (Gen. Stat. 1915, § 5930.)

(*Cain v. Zinc Co.*, 94 Kan. 679, 146 Pac. 1165, 148 Pac. 251; *Roberts v. Packing Co.*, 95 Kan. 723, 149 Pac. 413; *McCracken v. Bridge Co.*, 96 Kan. 353, id. 799, 153 Pac. 525; *Halverhout v. Milling Co.*, 97 Kan. 484, 155 Pac. 916.)

Since the statute gave the injured workman a right to a lump-sum judgment, and merely added a grant of discretionary power to the court to modify that right, a failure to exercise a discretionary power which the trial court might or might not care to use does not ordinarily amount to abuse of discretion. Cases have come before this court, and perhaps this is one itself, where, if we were trial judges, we would probably have awarded periodical and terminable payments, although we realize that such a disposition of the matter would give trial judges additional labor, since it is easier to decree lump-sum judgments and get the judicial business completely and finally dispatched while the facts are all fresh in memory; but even so, no abuse of discretion in failure to exercise a mere

discretionary power being manifest here, we cannot substitute our judgment for the judgment of the trial court on the very matter which the statute has left to the trial court's determination. (*Gorrell, v. Battelle,* 93 Kan. 370, syl. ¶ 5, 144 Pac. 244; *Perkins v. Accident Association,* 96 Kan. 553, 555, 152 Pac. 786.)

The judgment is affirmed.